# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CHRISTOPHER JONES | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| CITY OF PHILADELPHIA, et al | : | NO. 08-3336 |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                February 24, 2011

Plaintiff, Christopher Jones, initiated this civil rights action pursuant to 42 U.S.C. § 1983 against six Philadelphia police officers and the City of Philadelphia on behalf of the estate of his brother, Bryan Jones, who was shot and killed by Officer Steven Szczepkowski on January 1, 2007. Before the Court is Defendants' Motion for Summary Judgment. For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 31, 2006, Officers Steven Szczepkowski and Michael Trintz were partnered and assigned to respond to reports of celebratory New Year's Eve gunfire.[2] Shortly after midnight, the officers were called to the 1700 block of 59th Street, based upon a report of multiple gunshots and an officer in need of assistance. When they arrived at the intersection of 59th Street and Haddington Lane, Szczepkowski heard gunfire and observed two officers outside of their vehicles on North 59th

---

[1] Unless otherwise indicated, the following facts are undisputed.

[2] For many years, the Philadelphia Police Department has responded to gunfire on New Year's Eve. As a result, each year the Department places uniformed officers on New Year's Eve gun detail to patrol problem areas and respond to reports of gunfire.

1

Street firing at a male on the roof, while another officer took cover behind a tree. (Def.'s State. Facts ¶¶ 59, 63, 68, 70.)

Szczepkowski exited his vehicle, and with his gun drawn, ran east down Haddington Lane to secure the rear of the property. Szczepkowski testified that he then saw two individuals running south across Haddington Lane – one who was pointing a gun in his direction, and another who was reaching for his waistband and turning towards him. Szczepkowski fired his weapon twice, fatally wounding an individual later identified as Bryan Jones. (Def. State. Facts ¶¶ 77-80.) During an interview with police officials later that evening, another officer at the scene, Paul Tinnenney, reported seeing only one individual run across Haddington Lane in the moments before the shooting. (Doc. No. 63, Ex. F., D-3 pp. 4-7.)

Plaintiff alleges that Szczepkowski's use of deadly force violated Bryan Jones's right to be free of unreasonable seizures, as guaranteed by the Fourth and Fourteenth Amendments. He further contends that the City of Philadelphia is responsible for this constitutional violation, by virtue of its deficient policies and procedures regarding the pursuit and seizure of purported criminals, as well as its monitoring, investigation and discipline of Philadelphia police officers. Plaintiff also raises claims under Pennsylvania law.[3] (Compl. ¶¶ 31-40, 50-60, 67-68, 71-77, 83-89.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if there is no

---

[3] Following oral argument, Plaintiff filed an amended complaint, which by agreement, added an assault and battery claim against Officer Steven Szczepkowski and withdrew a claim of negligence against the City of Philadelphia and claims of intentional infliction of emotional distress against Officer Szczepkowski and John Doe Police Officers (1-5), (Doc. No. 72) (hereinafter "Compl.").

genuine issue of material fact and the moving party is entitled to judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## III. DISCUSSION

Defendants move for summary judgment, asserting that: (1) the undisputed facts reflect that Officer Szczepkowski did not violate the constitutional rights of Bryan Jones, as is required under § 1983; (2) Officer Szczepkowski is entitled to qualified immunity; (3) Plaintiff has failed to adduce sufficient evidence to sustain a claim against the City of Philadelphia, pursuant to Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1992); and (4) Plaintiff's claims of reckless disregard of safety and wrongful death are barred by the Pennsylvania Political Subdivision Tort Claims Act.

### A. The Alleged Fourth Amendment Constitutional Violation

To establish a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under the color of state law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury. Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). Plaintiff's § 1983 claim is based upon Officer Szczepkowski's alleged use of excessive force in violation of the Fourth

Amendment.[4]  Under this theory, Plaintiff must establish that "a 'seizure' occurred and that it was unreasonable."  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)).

Because there is no question that Jones was seized, our analysis centers upon whether any material factual issues exist as to the reasonableness of the seizure.  The "test for reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'"  Kopec, 361 F.3d at 776 (quoting Graham v. Conner, 490 U.S. 386, 397 (1989)).  In cases involving the use of deadly force, the factfinder must consider, among other factors, whether it was objectively reasonable for the officer to believe that such force was "necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious bodily injury to the officer[] or others[.]"  Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999).

In support of summary judgment, Defendants point to the testimony of Officer Szczepkowski, which they claim is undisputed.  Szczepkowski testified that after arriving at the 1700 block of North 59th Street, in response to reports of gun fire and a request for an officer assist, he exited his patrol car to secure the rear of the property and saw two individuals running south across Haddington Lane towards a pedestrian stairway.  Szczepkowski claimed that the first individual to cross the street pointed a gun at him, and that the second "turned in [his] direction and grabbed his waistband."  Szczepkowski testified that, upon seeing these gestures, he fired his weapon twice at

---

[4] The Fourth Amendment is applied to the states through the Fourteenth Amendment Due Process Clause.  See O'Conner v. Ortega, 480 U.S. 709, 714 (1987).

the second individual, who was later identified as Bryan Jones. (Szczepkowski Depo. pp. 59, 83-85, 129-37.)

Officer Paul Tinnenney's initial version of the events, however, could be viewed as inconsistent with Officer Szczepkowski's account. As noted above, in an interview with police officials following the shooting, Officer Tinnenney stated that he was walking east on the north sidewalk of Haddington Lane when Officer Szczepkowski shot Bryan Jones. Prior to the shooting, Tinnenney claimed that he saw Jones running south across Haddington Lane, but that he did not observe any other civilians running with him. (Doc. No. 63, Ex. F., D-3 pp. 4-7.) At deposition, Tinnenney testified that he did not see Jones until after he was shot and that he saw the "silhouette" of another person "at the top of the stairwell" in front of Jones. (Tinnenney Depo. pp. 49, 66-68, 72-74.)

Viewed in a light most favorable to Plaintiff, the discrepancies between Tinnenney's and Szczepkowski's observations present a genuine issue of material fact for trial regarding how events unfolded and whether Szczepkowski acted reasonably. Kopec, 361 F.3d at 776 (noting that reasonableness is "frequently an issue for the jury," and that summary judgment is appropriate only when, resolving all factual disputes in favor of Plaintiff, the officers' use of force is objectively reasonable).[5]

---

[5] See also (N.T. 12/14/10 pp. 19-21) (reflecting that credibility issues exist with respect to the testimony of the other officers who, although on North 59th Street moments before the shooting, claim they saw a second individual on Haddington Lane). Compare (Doc. No. 63, Ex. C p. 145) (reflecting that Jones was shot in the side of the head, approximately two inches above and one inch in front of his right ear) with (Szczepkowski Depo. pp. 132-33) (reflecting that Szczepkowski testified that, before he fired his weapon, Jones turned his body towards him and looked in his direction).

### B. **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). To determine whether this protection applies, courts consider: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation. Id. at 822.

Because we have already determined that a triable issue of fact exists as to whether Defendant violated Jones' Fourth Amendment rights, our analysis centers upon whether his right was clearly established. A right is clearly established where, in "light of pre-existing law," a "reasonable official would understand that what he is doing violated that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002); see Wade v. Colaner, 2010 WL 1490590 at *9 (D.N.J. Apr. 13, 2010). At this stage, given the questions of fact that remain, we are unable to conclude that a reasonable officer in Officer Szczepkowski's position would believe he or she was authorized to use deadly force under the same circumstances. See Hodinka v. Delaware County, 2011 WL 49570 at *13-14 (E.D.Pa. Jan. 7, 2011); Pagan v. Ogden, 2010 WL 3058132 at *6-7 (Jul. 30, 2010). We, therefore, decline to grant Szczepkowski qualified immunity.

### C. **Municipal Liability**

To sustain a claim against a municipality under § 1983, Plaintiff must demonstrate that it, "under color of some official policy, 'cause[d]' an employee to violate another's constitutional rights." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1992). Specifically,

a plaintiff must demonstrate that: (1) the municipality had a policy or custom that deprived the individual of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the individual's injuries were caused by the identified policy or custom. Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997).

A policy or custom may exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in violation of constitutional rights, that the policymaker can reasonably be said to be deliberately indifferent to the need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003); see City of Canton v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference may be established where the municipality has failed to act in the face of a pattern of constitutional violations or where "a violation of federal rights [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Berg v. County of Allegheny County, 219 F.3d 261, 276-77 (3d Cir. 2000) (quoting Bryan County, 520 U.S. at 408-09).

Plaintiff contends that the City was deliberately indifferent to the obvious risk of future constitutional violations, after failing to implement a "foot pursuit" or "partner splitting" procedure, as recommended by a 2005 report of the Philadelphia Police Department's Integrity and Accountability Office (IAO Report). See ELLEN GREEN-CEISLER, INTEGRITY AND ACCOUNTABILITY OFFICE-INVOLVED SHOOTINGS 1-2, 67 (2005) (attached as Exhibit R to Pl.'s Br.) Plaintiff further contends that the absence of such a procedure was a "motivating force" behind the violation of Bryan Jones' constitutional rights.

Plaintiff primarily relies upon Pelzer v. City of Philadelphia, which held that, while the IAO

7

Report did not place the City on notice of a pattern of past constitutional violations, a reasonable jury could find that the report alerted the City of "a known need for a new policy to counter the emotion-driven aspects of a pursuit, especially when an officer's decisions can directly increase or decrease the threat of imminent death or serious bodily injury." 656 F.Supp.2d 517, 535-36 (E.D.Pa. 2009).

Defendants urge us to depart from Pelzer, asserting that it is inconsistent with controlling United States Supreme Court and Third Circuit cases. (Def.'s Reply 4-6.) Specifically, Defendant claims that the Pelzer Court inappropriately found that the City could be liable for failing to respond to an obvious risk of future injury, whereas the controlling precedent requires there be an obvious risk of future constitutional violations.

Although when read in isolation, certain language in the Pelzer opinion may support Defendant's argument, we consider Pelzer to be consistent with past precedent. A plaintiff may prove a Monell claim based upon a municipality's failure to act in the face of an obvious risk of future constitutional violations, even where he or she is unable to establish a past pattern of such violations. See, e.g., Bryan County, 520 U.S. at 408-09; Natale, 318 F.3d at 584; Berg, 219 F.3d at 276-77. In our view, the Pelzer Court correctly determined that the IOA Report could reasonably be viewed as a warning to the City that its officers were employing "poor judgment and tactics" in their pursuit of suspects, placing themselves in "unnecessarily exposed and vulnerable positions, virtually assuring the fact that deadly force would be [their] only opinion if the situation escalated." ELLEN GREEN-CEISLER at 62-63; Pelzer, 656 F.Supp.2d at 334-36 & n.32. Understanding that the City was aware that its officers may be ill-equipped to handle recurrent situations that impact their decision to use deadly force, a jury could reasonably conclude that the City was deliberately indifferent to the obvious risk that such force could be used unconstitutionally moving forward,

8

unless certain corrective action was taken.

We also conclude that a genuine issue of material fact exists as to whether the City's alleged deliberate indifference was the "moving force" behind Officer Szczepkowski's actions and the "cause" of Plaintiff's injury. Officer Szczepkowski testified that when he arrived on scene, he immediately split from his partner and proceeded east on Haddington Lane to secure the back of the property. He claimed that he heard foot steps coming his way, and when two men eventually appeared, he tried to yell "stop" and continued toward them, "running and ducking," in an attempt to make an "investigatory stop." (Szczepkowski Depo. 90, 98, 118-19, 129-32, 135-37, 152-64.) Based upon this testimony, a reasonable jury could find that the City's failure to adopt a "partner splitting" and "foot pursuit" policy, in light of the IAO Report's recommendations, rendered Officer Szczepkowski unequipped to properly handle the incident in question and thereby "caused" the alleged constitutional violation. Monell, 436 U.S. at 690-92; see ELLEN GREEN-CEISLER at 62-63, 67.

### D. State Law Claims

Finally, Defendants assert that Plaintiff's state law claims for reckless disregard for safety and wrongful death are barred by the Political Subdivision Tort Claims Act ("Act"), 42 Pa.C.S. §§ 8541-8565. Aside from a narrow set of negligence actions, the Act provides that a government official may only be liable for conduct that "constitute[s] a crime, actual fraud, actual malice or wilful misconduct." 42 Pa.C.S.A. §§ 8542, 8550. Generally, wilful misconduct has been interpreted as conduct whereby "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Associates In Obstetrics & Gynocology v. Upper Merion Twp., 270 F.Supp.2d 633, 663 (E.D.Pa. 2003). In cases

alleging police misconduct, a heightened standard is applied, such that liability may only be imposed if an officer "acted with the knowledge that his conduct was unlawful and with the purpose of achieving an unlawful result." Brummell v. City of Harrisburg, 2010 WL 3896382 at *3-4 (W.D.Pa. Sept. 30, 2010); see Owens v. City of Philadelphia, 6 F.Supp.2d 373, 394-95 (E.D.Pa. 1998).

We conclude that Plaintiff's claim of reckless disregard for safety is barred by the Tort Claims Act. This claim sounds in negligence,[6] whereas willful misconduct generally requires, at a minimum, the commission of an intentional tort. Compare Brockington v. City of Philadelphia, 354 F.Supp.2d 563, 570-71 (E.D.Pa. 2005); O'Neill v. City of Philadelphia, 2006 WL 3682104 at *6 (E.D.Pa. Dec. 12, 2006); Renk v. City of Pittsburgh, 641 A.2d 289, 293-94 (Pa. 1994) (holding that immunity in cases involving police officers will not be found upon a finding that the officer committed an intentional tort or was reckless, without more) with RESTATEMENT (SECOND) OF TORTS § 500 (2010). The conduct alleged, while approaching intentional misconduct, requires an evaluation of objective reasonableness which is wholly inconsistent with the willful misconduct exception to the Tort Claims Act, especially as it is applied in cases involving police officers. See RESTATEMENT (SECOND) OF TORTS § 500, cmts. ("Reckless misconduct differs from intentional misconduct in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.")

---

[6] A claim for reckless disregard of safety is stated where "[t]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." RESTATEMENT (SECOND) OF TORTS § 500 (2010) (emphasis added).

We will, however, not dismiss Plaintiff's allegations under the wrongful death and survival act, pursuant to 20 Pa.C.S. § 3373 and 42 Pa.C.S. § 8031, as to Officer Szczepkowski. Wrongful death and survival claims are not substantive causes of action. They, rather, provide a means of recovery for state law tort claims that result in death. Sullivan v. Warminster Twp., 2010 WL 2164520 *6 (E.D.Pa. May 27, 2010). Thus, these claims are entirely derivative of any state law claim that may be properly presented to a jury. Id.

That said, we find that Plaintiff's state law claims of assault and battery against Officer Szczepkowski provide a basis for a wrongful death and survival claim against him. Under Pennsylvania law, "[a]ssault in an intentional attempt by force to do an injury to the person of another; and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk, 641 A.2d at 293. A police officer may be liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary and excessive. Id. For the reasons stated above, we conclude that a jury could find that the forced used by Officer Szczepkowski constituted an assault and battery.

We further conclude that Officer Szczepkowski is not entitled to immunity under the Tort Claims Act because a jury could find that his actions amounted to wilful misconduct. A genuine factual issue exists as to whether he acted with the knowledge that the force he used was excessive and with the purpose of achieving an unlawful result. See Brummell, 2010 WL 3896382 at *3-4.

Therefore, we will deny Defendants' motion to the extent it seeks dismissal of Plaintiff's wrongful death and survival act claims against Officer Szczepkowski. See Sullivan, 2010 WL 2164520 at *6. However, because there are no remaining state law claims against "John Doe Police Officers (1-5)" or the City, we will dismiss Plaintiff's wrongful death and survival claims as to those

Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' "Motion for Summary Judgment" (Doc. No. 59) is granted in part and denied in part. Specifically, Defendants' motion is granted with respect to Plaintiff's claims of reckless disregard for safety and his claims under the wrongful death and survival act, as to Defendants "John Doe Police Officer (1-5)" and the City of Philadelphia. The motion is denied in all other respects.

Our Order follows.